# EXHIBIT E

# APPELLATE ADVOCATES

111 JOHN STREET – 9TH FLOOR, NEW YORK, NEW YORK 10038
PHONE: (212) 693-0085   FAX: (212) 693-0878

*ATTORNEY-IN-CHARGE*
PAUL SKIP LAISURE

*ASSISTANT ATTORNEY-IN-CHARGE*
DAVID P. GREENBERG

*SUPERVISING ATTORNEYS*
ERICA HORWITZ
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON
LEILA HULL
A. ALEXANDER DONN
PATRICIA PAZNER
MARK W. VORKINK
ALEXIS A. ASCHER
TAMMY E. LINN
MICHAEL ARTHUS

*DIRECTOR OF INNOCENCE INVESTIGATIONS*
DE NICE POWELL

*SENIOR COUNSEL*
YVONNE SHIVERS
KATHLEEN E. WHOOLEY
DENISE A. CORSI
JOSHUA M. LEVINE
MELISSA S. HORLICK

*FOUNDER AND SENIOR COUNSEL*
LYNN W. L. FAHEY

*SENIOR STAFF ATTORNEYS*
JENIN YOUNES
NAO TERAI
ANDERS NELSON
MEREDITH S. HOLT

*STAFF ATTORNEYS*
SAMUEL BARR
CAITLYN B. CARPENTER
CYNTHIA COLT
ALICE R. B. CULLINA
PARIS C. DEYOUNG
SAMUEL R. FELDMAN
DAVID FITZMAURICE
REBECCA J. GANNON
DAVID L. GOODWIN
*DENISE GROSMAN
HANNAH KON
ANNA KOU
MELISSA LEE
CHELSEA F. LOPEZ
EMILY T. LURIE
SEAN H. MURRAY
SEAN NUTTALL
AVA C. PAGE
PRIYA RAGHAVAN
MARTIN B. SAWYER
JONATHAN SCHOEPP-WONG
ANGAD SINGH
SARAH VENDZULES
*PATTY C. WALTON
BENJAMIN WELIKSON
DINA ZLOCZOWER

*AWAITING ADMISSION

June 8, 2020

Hon. Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

Re:   People v. Bertrand Henry
Kings Co. Indictment No:7388/13
A.D. No. 2016-03720
(Criminal Leave Application)

Your Honor:

This letter supplements Mr. Henry's May 14, 2020 leave application, which is pending before your Honor. In Mr. Henry's case, the court excluded powerful evidence of the complainant's motive to fabricate and allowed an indictment with impermissibly broad timeframes though the complainant was aware of specific dates the crimes allegedly occurred. These rulings gutted Mr. Henry's defense: he was prevented from showing that the complainant had a very strong motive to falsely accuse him and from establishing his alibi. This case presents an opportunity for this Court to provide guidance as to what standard is applicable to establish a motive to fabricate in child sexual abuse cases and to clarify whether prosecutors are always required to undertake a reasonable investigation to specify dates charged in an indictment even if the indictment otherwise appears to provide "fair notice" of the charges.

Hon. Fahey                                                                    July 8, 2020

The Evidence at Trial

Appellant was charged with rape in the first degree (2 counts), rape in the second degree (5 counts), and criminal sexual act (2 counts), based on the 13-year-old complainant's allegation that Mr. Henry had intercourse with her over a period of 9 months.   In August 2013, the complainant's mother took her to the doctor because she was feeling unwell.   When medical personnel informed the complainant and her mother that the complainant was pregnant, her mother immediately confronted her and demanded to know who the father was.   The complainant told her mother that Mr. Henry had raped her and was the father.   She similarly told medical personnel at the time that she was sexually active with only one person, Mr. Henry.   Rather than go to the police, the complainant's mother confronted Mr. Henry in a car with the complainant present.   The complainant's testimony and her mother's testimony concerning when, where, and even what Mr. Henry admitted were inconsistent both with each other's accounts and with their own.   In a recording produced later by the complainant's mother, Mr. Henry appears to agree that he had sex with the complainant in response to directed questions from the complainant's mother, though he never explicitly admits to this.   He also signed a contract, he claimed under duress, agreeing to pay the complainant's mother up to $20,000.00 for the care of the complainant and her child.   After several days—during which time Mr. Henry refused to accede to the mother's demand for even more money—she went to the police.   Once he was arrested, Mr. Henry vehemently denied the complainant's allegations.   Several months later, in December 2013, DNA tests performed on the complainant's fetus showed that Mr. Henry was not the father.   The complainant admitted at trial that she had a 14-year-old boyfriend, but the court prevented defense counsel from establishing that the complainant was sexually active with the boyfriend (who was likely also the father of her baby).

Defense counsel attempted to cross-examine both the complainant and her mother about the nature of their relationship, and specifically whether the complainant's relationship with either of her parents was abusive and whether she feared her parents.   The court, however, severely limited the scope of these lines of questioning, and sustained objections to questions concerning whether there was friction between the complainant and her mother;  questions concerning whether the complainant's mother had threatened to send her back to Jamaica; questions concerning the reasons why the complainant did not want to engage in too much conversation with her mother; questions to the complainant about whether her mother ever hit her; and questioning the complainant as to whether the complainant's mother was angry with the her because she had gotten pregnant and whether they had any disagreement over it.   The court also sustained the People's objections to defense counsel's questions to the complainant's mother as to whether she had "problems with" the complainant; whether she had ever hit her daughter; and whether her daughter had ever run away from home.

Mr. Henry's counsel repeatedly told the court that he had a good faith basis to explore these areas of questioning and that establishing the complainant's fear of her parents was essential to his client's defense of a motive to fabricate.   Even after defense counsel explained that his good faith rested in part on a letter the complainant had written in February 2014 stating that her mother "hates" her and had threatened to send her back to Jamaica to live with her abusive father (T. 103).   The court not only refused to allow the letter to come into evidence, or be used for impeachment, but also found that the letter and the complainant's relationship with her parents had "nothing to

2

Hon. Fahey                                                              July 8, 2020

do with what's going on with this case" (T. 104).  The court limited the defense to asking very broad, imprecise questions that did not reference the complainant's fear of her parents or reference abuse.  These included vague questions about what "the complainant's relationship was like with [her] mother" and whether she "ever had disputes with [her] mom" (T. 240-41).  The limitations set by the court prevented defense counsel from getting at the heart of the complainant's fear of her parents and corresponding motive to lie about who the father of her unborn child was.  When the complainant denied having any problems with her mother, defense counsel was prevented from impeaching her testimony with her own pretrial statements in the letter she wrote.  Nor was defense counsel permitted to introduce the document created by Planned Parenthood personnel in which the complainant lied about how many sexual partners she had, or to ask the complainant if she was sexually active with her 14-year-old boyfriend, which was also highly relevant to her motive to lie.

In addition to her false statements about her sexual activities, the complainant was also inconsistent about other crucial details.  She was unable to accurately describe Mr. Henry's chest, which had scarring and discoloration from injuries he sustained in the Iraq war, despite claiming to have seen him naked multiple times.  Contrary to the complainant's testimony that Mr. Henry's chest was covered in thick, dark hair, photographs of his chest showed he had almost no chest hair at all and skin discoloration.  She was also unable to give consistent testimony about the events that took place on the days that she was supposedly raped, changing her testimony to account for timing gaps that would have exposed glaring inconsistencies in her allegations.

Though the indictment charged broad time periods in each count, the complainant significantly narrowed these periods when asked about them on cross-examination.  For counts 1 and 2, she narrowed the time frame from a month down to approximately four days (sometime between September 1, 2012 and September 4, 2012).  For counts 3 and 4, she narrowed the six weeks referenced in the indictment to approximately four days (the two first weekends in November 2012).  She similarly narrowed the charges in count 5 to a single day—November 12, 2012, her birthday.  Crucially, the complainant claimed to have relayed this date to the detective and prosecutors, yet the prosecution still failed to specify that date in count 5 of the indictment, which charged that the crime occurred between November 12, 2012 and November 14, 2012.  Count 6 of the indictment alleged the crime occurred within a period lasting almost 2 months, yet on cross-examination the complainant narrowed this to a single week.  For Count 8, the complainant further specified that Mr. Henry raped her on a school day in the month of May, eliminating the weekends charged in Count 8.

<u>The Appeal</u>

Mr. Henry argued on appeal, <u>inter alia</u>, that his due process right to present a complete defense was violated by the court's refusal to allow him to present evidence of the complainant's fear of her parents and sexual activity with her 14-year-old boyfriend and corresponding motive to fabricate her allegations.  Mr. Henry's defense could have been that when the complainant's pregnancy was discovered, her fear of her parents caused her to lie about who had impregnated her: if she said that she was raped by an adult, instead of simply being irresponsible with a peer, she evaded very harsh consequences, which could have included banishment and abuse.  Mr. Henry argued that the court erroneously deprived him of that defense.  He also argued that the

Hon. Fahey                                                                July 8, 2020

overly broad periods charged in the indictment violated his due process right to notice of the charges against him and prevented him from effectively establishing an alibi, and that the People had not done the required reasonable investigation in trying to narrow the periods charged.

In a decision dated May 6, 2020, the Appellate Division, Second Department, held that Mr. Henry's argument that the indictment failed to provide him with fair notice was unpreserved and, in any event, the time periods charged were specific enough to provide notice. The court did not specifically address the argument that Mr. Henry was denied the right to present a complete defense.

<u>Reasons Leave Should be Granted</u>

This case presents an opportunity for the Court to provide much-needed guidance on the scope of a defendant's right to present a defense in the context of child rape and, specifically, what standard should be applied in determining whether extrinsic evidence is admissible to prove a motive to fabricate in these cases. This case also presents an opportunity for the Court to clarify the prosecution's investigatory obligations vis-à-vis narrowing the time periods charged in an indictment.

A.    <u>The Admissibility of Extrinsic Evidence in Child Rape Cases</u>.

This Court has long held that "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground." <u>People v. Hudy</u>, 73 N.Y.2d 40, 56, (1988), <u>abrogated in part on other grounds by</u> <u>Carmell v. Texas</u>, 529 U.S. 513 (2000). Extrinsic evidence showing a motive to fabricate thus cannot be excluded "provided that counsel has a good faith basis for eliciting the evidence." <u>People v. Spencer</u>, 20 N.Y.3d 954, 956 (2012); <u>see</u> <u>also</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 51–52, (1987) ("the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable.").

This Court has previously defined "good faith" in the context of cross-examination to require only "that counsel have some reasonable basis for believing the truth of things about which counsel seeks to ask." <u>People v. Rouse</u>, 34 N.Y.3d 269, 277 (2019) (internal quotations omitted). According to the standards set forth by this Court, then, all that is required for the admission of extrinsic evidence to show a motive to fabricate is a reasonable or good faith belief on the part of defense counsel that such a motive exists. <u>See</u> <u>Spencer</u>, 20 N.Y.3d at 956. Yet far more often than not, in all manner of cases, the Appellate Divisions find that evidence of a motive to fabricate must be excluded as too "remote," or "speculative." <u>See, e.g.</u>, <u>People v. Grose</u>, 172 A.D.3d 1092, 1093 (2d Dep't 2019) (acknowledging that "c]ross-examination aimed at establishing a motive to fabricate must proceed on some good faith basis" but finding that the trial court properly excluded "the proposed line of inquiry by defense counsel" because it "was too remote and speculative to infer a motive to fabricate"); <u>People v. Stone</u>, 133 A.D.3d 982, 985 (3d Dep't 2015) (trial court properly precluded defense counsel from questioning a witness about whether the defendant had tried to document physical abuse of the victim a decade before because the evidence was "too remote and speculative"); <u>People v. Poole</u>, 55 A.D.3d 1349, 1350 (4th Dep't 2008) (finding that "the court may in its discretion exclude such proof if it is too remote or speculative"); <u>People v. Mestres</u>, 41 A.D.3d 618, 618 (2d Dep't 2007) (affirming trial court's decision to exclude evidence

that complainant was motivated to fabricate because defendant had rejected her offer of marriage, finding that "[w]hile proof aimed at establishing a motive to fabricate is never collateral and may not be excluded upon that ground, a trial court may, in the exercise of its discretion, properly exclude such proof where, as here, the proof is too remote and speculative to establish a motive to fabricate"). While this may seem like two sides of the same coin, in practice it results in the exclusion of plausible evidence of a motive to fabricate because it relies on the court's view of whether the evidence is speculative or remote instead of on the reasonableness of defense counsel's belief that the evidence shows a motive to fabricate.

Notably, the intermediate appellate courts have also moved away from applying the good faith/reasonable basis standard in child rape cases, often finding instead that the information, in the trial court's view, was too remote or speculative. See, e.g., People v. Jones, No. 196/16, 2020 WL 3260966, at *1 (2d Dep't June 17, 2020) (acknowledging that "examination of witnesses to establish such a motive must proceed upon some good-faith basis," but finding that "the court properly limited defense counsel's questioning of the complainant in a child rape case about a motive to lie to avoid inquiry into a "speculative and remote matter.""); People v. Green, 17 A.D.3d 1076, 1077, 793 N.Y.S.2d 790 (2005) (affirming conviction for course of sexual conduct against a child because the trial court "properly exercised its discretion in precluding certain collateral evidence because it was too remote"). This is problematic because child rape cases present "special risks of unreliable testimony." Kennedy v. Louisiana, 554 U.S. 407, 444, as modified (Oct. 1, 2008), opinion modified on denial of reh'g, 554 U.S. 945, 129 S. Ct. 1, 171 L. Ed. 2d 932 (2008). As Justice Kennedy noted in Kennedy v. Louisiana, unlike in many other crimes, the account of the crime necessarily comes only from the child herself because she and the accused are usually the only people present. Id. And children sometimes give false testimony.

The rate of false allegations of child sexual abuse has been a topic of research spanning back to as early as the 1970s. One metanalysis of a number of studies on the prevalence of false allegations by children revealed that children and adolescents falsely allege sexual abuse in rates ranging from "two to eight percent of referrals to child abuse clinics, six percent of emergency room referrals, and substantially higher rates of 36.4% to 55.5% in the special circumstance of allegations arising out of the context of custody disputes." Mikkelsen, E.J., Gutheil, T.G. and Emens, M., False Sexual Abuse Allegations by Children and Adolescents: Contextual Factors and Clinical Subtypes, Am. J. of Psychother. 46: 556-70 (1992). Another large study of almost 800 sexual abuse allegations found that at least 6% were intentionally false. O'Donohue W., Cummings C., Willis B., The Frequency of False Allegations of Child Sexual Abuse: A Critical Review J Child Sex Abus. 27(5):459-475 (2018). Adolescents are more likely to intentionally fabricate these allegations, and research in this area shows that 8% of sexual abuse allegations made by adolescents are false. Id. The ability to explore a motive to fabricate thus takes on increased importance in child sexual abuse cases because of the possibility of false allegations and the absence of evidence other than the child's word.

The last time that this Court addressed a motive to fabricate in a child rape case was in People v. Halter, 19 N.Y.3d 1046 (2012), but it did so only in the narrow context of the Rape Shield Law and did not delve into the broader "good faith basis" standard. Halter addressed a situation in which the only evidence excluded exclusively concerned the complainant's sexual proclivities and behavior—her sexual relationship with her boyfriend, sexually provocative

Hon. Fahey                                                                                          July 8, 2020

postings on Myspace, and sexualized attire.  The <u>Halter</u> Court was, understandably, loathe to give wide latitude to defendants blurring the line between a legitimate motive to fabricate and simply painting a complainant as promiscuous.  This Court was thus not given the opportunity to address the scope of the right to present a defense in a child rape case when the motive to fabricate is far more complex and direct—as was the case here. [1]

Here, unlike in <u>Halter</u>, the complainant's sexual relationship with her boyfriend was directly relevant to her motive to fabricate because she made her supposed outcry only after it was discovered that she was pregnant.  Mr. Henry's only defense was that the complainant was terrified of telling her mother that her pregnancy was the result of a sexual relationship with her 14-year-old boyfriend, a peer.  Her very real fear of being sent back to Jamaica, to an abusive father and away from her mother and sister, created a powerful motive to fabricate, and the defense should have been permitted to explore it.  Counsel had far more than a "reasonable basis" to believe the truth of the complainant's motive because she had referenced those very fears in the February 2014 letter.  Yet the appellate division implicitly upheld the exclusion of this evidence by affirming the conviction.[2]

Child rape cases almost always hinge on a child's allegation and account, allegations that are known to be false somewhere between 6% and 8% of the time.  This, coupled with the jury's natural desire to hold someone accountable when faced with the heinous crime of child rape, creates a particular risk of wrongful conviction not found elsewhere.  The lower court's focus on whether the evidence is remote or speculative, instead of whether counsel has a reasonable basis to explore the motive, results in an overly restrictive policy that does not provide defendants in child rape cases adequate latitude to explore motives to fabricate.  Guidance is needed as to what standard is applicable in determining the admissibility of extrinsic evidence in child rape cases and what the boundaries of "good faith" and "reasonable basis" are.

This issue was fully preserved by defense counsel's repeated requests to introduce the letter and cross-examine the complainant concerning the details of her troubled relationship with her parents (T. 102-103, 236-37).

---

[1] The defendant in <u>Halter</u> "constantly argued" with his older daughter when she visited him, and he threatened to send her away to "brat camp" if her behavior did not improve.  <u>Halter</u>, 19 N.Y.3d at 1046.  Judge Smith dissented, expressing concern that the majority had so narrowed the scope of the right to present a defense that it was possibly upholding the conviction of an innocent man.  <u>Id</u>. at 1055-56 (Smith, J., dissenting).

[2] That the letter was written after the allegations at issue were made is of no moment because the fears described in the letter existed at the time of the complainant's outcry.  Specifically, the complainant lived with her father in Jamaica prior to arriving in the U.S. when she was 11.  The abuse she describes in the letter occurred prior to her arrival to the United States and the allegations in this case, as did her fear of her mother.  Far from being remote or speculative, the timing of the letter supports the defense's theory: DNA evidence showing that Mr. Henry did not impregnate the complainant did not come to light until December 2013.  While she may have avoided angering her parents until that time by claiming she was raped by Mr. Henry, by February 2014, when she wrote the letter, her parents would have discovered the truth.

Hon. Fahey                                                                          July 8, 2020

B.      Prosecutors' Obligation to Reasonably Investigate the Timing of Sexual Abuse Allegations

The Court should issue additional guidance on the steps that prosecutors must take to adequately narrow the time periods charged in an indictment. A defendant is entitled to an indictment that has "sufficient specificity to adequately prepare a defense." People v. Sedlock, 8 N.Y.3d 535, 539 (2007). This Court has previously required the People to conduct "a reasonably thorough investigation" and make "diligent efforts" to ascertain as specific a date as possible. Id. A two-month period may be sufficiently specific to provide notice in one case and yet be insufficient in another case depending on whether "a more specific date could have been obtained through diligent efforts" of the prosecutor. Id.

Here, the Appellate Division found that the time periods in the indictment were "sufficiently specific to provide the defendant with fair notice of the charges," without making a finding of whether the People had conducted a reasonably thorough investigation to narrow those periods. Relieving prosecutors of the obligation to reasonably investigate dilutes a defendant's due process right to have adequate notice of the charges against him. It ignores this Court's direction that the particular circumstances of each case, and the reasonableness of the prosecution's efforts to ascertain the most accurate dates, dictate whether the indictment was sufficiently specific.

The requirement that the prosecution reasonably investigate to ensure the indictment is as temporally specific as possible acts as a safeguard to ensure a defendant's due process rights are protected. Without this obligation, prosecutors will have no incentive to ever undertake an investigation to provide sufficiently specific time periods because they can rely on a blanket "fair notice" standard that does not account for the particular circumstances of each case. This Court should clarify that, regardless of whether an appellate court believes a defendant had fair notice, if the prosecution did not comply with its obligation to reasonably investigate the indictment was flawed and the defendant was not given an adequate opportunity to prepare a defense.

This claim was preserved. Defense counsel raised this objection during a pretrial hearing in which he also objected to the admission of prior bad act evidence. Defense counsel also objected to the "nebulous" time periods that made it difficult to nail down exactly when allegations occurred (H. 8). The trial court responded that the time periods set in the indictment were "well within the accepted parameters" and then cautioned counsel not to bring the issue up again (H. 9).

* * *

For these reasons, Mr. Henry seeks leave to appeal on these issues and all issues raised in his briefs in the Appellate Division, including all federal constitutional claims. U.S. Const., Amend. XIV; Jackson v. Virginia, 443 U.S. 307 (1979).

To the extent that any of these claims are unpreserved, we request that the Court grant leave to appeal on the ground that appellant's counsel was ineffective, thus depriving him of his constitutional right to counsel, U.S. Const., amends. VI, XIV; Strickland v. Washington, 466 U.S. 668, 687-96 (1984).

7

Hon. Fahey                                                                July 8, 2020

        I am available at your Honor's convenience should your Honor have any questions and I
respectfully request a hearing on this application.

                                        Respectfully submitted,

                                        Hannah Kon
                                        Staff Attorney
                                        Appellate Advocates
                                        (212) 693-0085 ext.251

cc.     Hon. Eric Gonzalez
        District Attorney
        Kings County
        350 Jay Street
        Brooklyn, New York 11201
        Attn: ADA Diane Eisner

        Mr. Bertrand Henry
        16-A-1407
        Clinton Correctional Facility
        P.O. Box 2001
        Dannemora, New York 12929

**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

**Eric Gonzalez**
District Attorney

Diane R. Eisner
Assistant District Attorney

July 15, 2020

Honorable Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York  12207-1095

Re:  <u>People v. Bertrand Henry</u>
<u>Kings County</u>
Indictment Number 7388/13

Dear Judge Fahey:

The People oppose defendant's application for leave to appeal to the Court of Appeals from the Appellate Division's affirmance of his convictions because the claims upon which defendant bases his leave application were either correctly found to be unpreserved for appellate review by the Appellate Division and those claims present no issues of law for this Court's review, or they were correctly found to be meritless, and none of defendant's claims raises any issue of statewide significance.

Defendant was convicted, following a jury trial, of two counts of first-degree rape (P.L. § 130.35), five counts of second-degree rape (P.L. § 130.30), and two counts of first-degree criminal sexual act (P.L. § 130.50), for his repeated rapes of C.R., starting when she was twelve years old up and continuing up until she was thirteen and one-half years old.  The fifty-five year old defendant was C.R.'s mother's friend and sometimes boyfriend, who provided some financial support to the family, and he had befriended C.R. and her older sister, and had acted as a father figure to C.R., after C.R.'s mother brought her daughters to the United States from Jamaica in September 2011.

C.R. did not reveal the rapes until she got pregnant in August of 2013, at which time she told her mother of her sexual relations with defendant.  It was subsequently revealed that C.R. also had a sexual relationship with a young friend and that defendant was not the father of C.R.'s unborn child -- which information was all before the jury.

Hon. Eugene M. Fahey
July 15, 2020
Page 2

When C.R. told her mother of her relationship with defendant, her mother confronted defendant, who admitted the relationship. Defendant tried to come to a financial arrangement with C.R.'s mother, offering to pay for C.R.'s care in St. Vincent. Defendant signed a writing regarding this agreement and, in a conversation that C.R.'s mother secretly recorded, defendant admitted his sexual relationship with C.R.  C.R.'s mother thereafter brought the signed agreement and recording to the police and defendant was arrested.  At trial, defendant denied a sexual relationship with C.R. and explained his admissions to C.R.'s mother as having been caused by a "flashback" to his days in Iraq, and by purported threats to his son (see Respondent's Brief at 25-26).

Defendant appealed his convictions to the Appellate Division, Second Department.  By decision dated May 6, 2020, that Court affirmed his convictions, holding that defendant's claim that the evidence of his guilt was legally insufficient was unpreserved for appellate review and, in any event, meritless; that the verdicts were not against the weight of the evidence; that defendant's contention that the indictment failed to provide him with fair notice of the charges was unpreserved for appellate review and, in any event, meritless because the time periods charged in the indictment were sufficiently specific to provide defendant with fair notice of the charges; that outcry testimony was properly admitted for the relevant, nonhearsay purpose of completing the narrative of events leading to defendant's arrest; that defendant's contention that the admission into evidence of the recorded conversation deprived him of a fair trial was unpreserved for appellate review and, in any event, without merit; and that defendant's remaining contentions were without merit, except as to the excessiveness of his sentence, which the Appellate Division reduced.  People v. Henry, 183 A.D.3d 607 (2d Dep't 2020).

Defendant now asserts that leave to appeal to the Court of Appeals should be granted to review his claim that he was unfairly precluded from questioning C.R. and her mother about their relationship and how that impacted C.R.'s purported motive to lie about a sexual relationship with defendant.  However, as the trial court found, there was no good faith basis for the line of questioning that trial counsel attempted, because the basis for his questions came from a letter that C.R. wrote to a teacher after the sexual abuse had been revealed, and referred to her relationship with her parents post the revelation of her pregnancy. Moreover, as the People also argued in their brief, defense counsel at trial had sufficient evidence upon which to argue that C.R.'s relationship with her parents provided a motive to fabricate her accusations against defendant in order to avoid blame for her sexual relationship with a peer.  The People rely upon their

Hon. Eugene M. Fahey
July 15, 2020
Page 3

discussion of this issue at pp. 43-50 of the Respondent's Brief to
the Appellate Division in full support of it their position that
the   Appellate Division's determination that this claim was
entirely meritless was correct and that the issue does not warrant
review by the Court of Appeals.

Defendant's argument that the periods charged in the
indictment were overly broad was correctly found to be unpreserved
for appellate review by the Appellate Division, and no question of
law is presented for this Court's review.   The People rely upon
the discussion at pp. 51-54 of the Respondent's Brief to the
Appellate Division in full support of the correctness of the
Appellate Division's conclusion in this regard.

In sum, leave to appeal to the Court of Appeals should be
denied because defendant's claims either do not present questions
of law for review or the claims do not present issues of statewide
significance that warrant review by the Court of Appeals.

                              Sincerely,

                              *Diane R. Eisner*

                              Diane R. Eisner
                              Assistant District Attorney
                              (718) 250-2489


cc:  Appellate Advocates
     111 John Street – 9th Floor
     New York, N.Y. 10038

     Attn: Hannah Kon, Esq.

# APPELLATE ADVOCATES

111 JOHN STREET ~ 9TH FLOOR, NEW YORK, NEW YORK 10038
PHONE: (212) 693-0085    FAX: (212) 693-0878

*ATTORNEY-IN-CHARGE*
PAUL SKIP LAISURE

*ASSISTANT ATTORNEY-IN-CHARGE*
DAVID P. GREENBERG

*SUPERVISING ATTORNEYS*
ERICA HORWITZ
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON
LEILA HULL
A. ALEXANDER DONN
PATRICIA PAZNER
MARK W. VORKINK
ALEXIS A. ASCHER
TAMMY E. LINN
MICHAEL ARTHUS

*DIRECTOR OF INNOCENCE INVESTIGATIONS*
DE NICE POWELL

*SENIOR COUNSEL*
YVONNE SHIVERS
KATHLEEN E. WHOOLEY
DENISE A. CORSI
JOSHUA M. LEVINE
MELISSA S. HORLICK

*FOUNDER AND SENIOR COUNSEL*
LYNN W. L. FAHEY

*SENIOR STAFF ATTORNEYS*
JENIN YOUNES
NAO TERAI
ANDERS NELSON
MEREDITH S. HOLT

*STAFF ATTORNEYS*
SAMUEL BARR
CAITLYN B. CARPENTER
CYNTHIA COLT
ALICE R. B. CULLINA
PARIS C. DEYOUNG
SAMUEL R. FELDMAN
DAVID FITZMAURICE
REBECCA J. GANNON
DAVID L. GOODWIN
ISKUHI GRIGORYEV
*DENISE GROSMAN
HANNAH KON
ANNA KOU
MELISSA LEE
CHELSEA F. LOPEZ
EMILY T. LURIE
SEAN H. MURRAY
SEAN NUTTALL
AVA C. PAGE
PRIYA RAGHAVAN
MARTIN B. SAWYER
JONATHAN SCHOEPP-WONG
ANGAD SINGH
SARAH VENDZULES
*PATTY C. WALTON
BENJAMIN WELIKSON
DINA ZLOCZOWER

*AWAITING ADMISSION

July 17, 2020

Hon. Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

Re:    People v. Bertrand Henry
Kings Co. Indictment No:7388/13
A.D. No. 2016-03720
(Criminal Leave Application)

Your Honor:

I respectfully request permission to submit this reply to the People's opposition and in support of Mr. Henry's leave application.

The People argue that there was no good faith basis for questioning C.R. about her relationship with her parents because the questioning was based on a letter that she wrote "after the sexual abuse had been revealed, and referred to her relationship with her parents post the revelation of her pregnancy" (Opposition at 2). The People's position, however, illustrates why the dichotomy between the "good faith" standard articulated by this Court and the "remote and/or speculative" standard applied by the appellate divisions is not simply a question of semantics. Just 6 months after she accused Mr. Henry of rape, C.R. wrote a letter describing her fear of her parents and alleging they abused and neglected her. Defense counsel had a good faith belief, based on the letter, that C.R.'s fear of her parents' abuse and being sent back to Jamaica, which may well have

Hon. Fahey                                                                                         July 17, 2020

been long-standing, motivated her to falsely accuse Mr. Henry once her pregnancy was discovered. But counsel's good faith belief was somewhat speculative—the only way to confirm whether C.R.'s fear of her parents motivated the allegations at issue was to question her about that fear. Yet the trial court prohibited this line of inquiry because the lower courts exclude extrinsic evidence if the court determines it to be too remote or speculative, regardless of whether defense counsel had a good faith basis.  This results in the frequent exclusion of evidence critical to establishing a defense, depriving defendants of their constitutional right to a fair trial.

The People also assert that Mr. Henry's argument that the time periods in the indictment were overly broad is unpreserved (Opposition at 3).  This ignores that, regardless of whether defense counsel adequately raised the issue to the trial court (and he did), the trial court itself "expressly decided the question raised on appeal." N.Y. Crim. Proc. Law § 470.05 (McKinney). Specifically, the trial court told defense counsel that "[c]riminal Appeals has ruled already in these types of cases on or about and between a set time period, which is in this case 30 days, is well within the accepted parameters, so I'm denying your argument. . . .I don't want to hear that again . . . .(H 9)."[1]  Defense counsel was not required to raise the issue again, or offer further argument at the risk of angering the trial court, in order to effectively preserve it.  As a result, the Appellate Division's holding that the claim was unpreserved was incorrect and there would be no bar to the Court's review of Mr. Henry's claim.

Respectfully submitted,

Hannah Kon
Staff Attorney
Appellate Advocates
(212) 693-0085 ext.251

cc.   Hon. Eric Gonzalez
      District Attorney
      Kings County
      350 Jay Street
      Brooklyn, New York 11201
      Attn: ADA Diane Eisner

      Mr. Bertrand Henry
      16-A-1407
      Clinton Correctional Facility
      P.O. Box 2001
      Dannemora, New York 12929

---

[1] It appears that the Reply brief was omitted from the original leave application.  A copy is enclosed with this letter.

2

# APPELLATE ADVOCATES

111 JOHN STREET - 9TH FLOOR, NEW YORK, NEW YORK 10038
PHONE: (212) 693-0085    FAX: (212) 693-0878

ATTORNEY-IN-CHARGE
PAUL SKIP LAISURE

ASSISTANT ATTORNEY-IN-CHARGE
DAVID P. GREENBERG

SUPERVISING ATTORNEYS
ERICA HORWITZ
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON
LEILA HULL
A. ALEXANDER DONN
PATRICIA PAZNER
MARK W. VORKINK
ALEXIS A. ASCHER
TAMMY E. LINN
MICHAEL ARTHUS

DIRECTOR OF INNOCENCE INVESTIGATIONS
DE NICE POWELL

SENIOR COUNSEL
YVONNE SHIVERS
KATHLEEN E. WHOOLEY
DENISE A. CORSI
JOSHUA M. LEVINE
MELISSA S. HORLICK

FOUNDER AND SENIOR COUNSEL
LYNN W. L. FAHEY

SENIOR STAFF ATTORNEYS
JENIN YOUNES
NAO TERAI
ANDERS NELSON
MEREDITH S. HOLT

STAFF ATTORNEYS
SAMUEL BARR
CAITLYN B. CARPENTER
CYNTHIA COLT
ALICE R. B. CULLINA
PARIS C. DEYOUNG
SAMUEL R. FELDMAN
DAVID FITZMAURICE
REBECCA J. GANNON
DAVID L. GOODWIN
ISKUHI GRIGORYEV
*DENISE GROSMAN
HANNAH KON
ANNA KOU
MELISSA LEE
CHELSEA F. LOPEZ
EMILY T. LURIE
SEAN H. MURRAY
SEAN NUTTALL
AVA C. PAGE
PRIYA RAGHAVAN
MARTIN B. SAWYER
JONATHAN SCHOEPP-WONG
ANGAD SINGH
SARAH VENDZULES
*PATTY C. WALTON
BENJAMIN WELIKSON
DINA ZLOCZOWER

*AWAITING ADMISSION

September 16, 2020

John P. Asiello, Esq.
Chief Clerk and Legal
Counsel to the Court
New York Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207

Re:   <u>People v. Bertrand Henry</u>
Kings Co. Indictment No:7388/13
A.D. No. 2016-03720
(Request for Reconsideration of
Denial of Leave to Appeal)

Dear Mr. Asiello:

Pursuant to Rule 500.20(d), I am submitting this letter as an application for reconsideration of Judge Eugene Fahey's order, dated September 8, 2020, denying leave to appeal in the above-captioned case. This request does not raise a new avenue for appeal, but rather clarifies several points of apparent confusion regarding Mr. Henry's initial leave application.

Mr. Henry's request for leave to appeal does not involve an application of the rape shield law or whether evidence of the complainant's sexual relationships should have been admitted. The fact that the complainant had been sexually active was already admitted

because of her pregnancy and the paternity test.  Rather, Mr. Henry asks this Court to review the test for the admissibility of <u>other</u> extrinsic evidence that is routinely applied by the Appellate Divisions but appears to have <u>never been explicitly reviewed or approved by this Court</u>.  The excluded evidence at issue in this appeal was unrelated to the complainant's sexual conduct but instead involved the complainant's fear of her parents.  The application of the rape shield law is thus not at issue here, and any focus by the People on the admissibility of evidence concerning the complainant's sexual relationships is entirely misplaced.  This appears to be the main cause of confusion surrounding Mr. Henry's leave application.

Mr. Henry instead seeks review of the Appellate Divisions' application of a "too remote or speculative" test[1] for the admissibility of extrinsic evidence of a motive to fabricate.  This Court has never addressed whether the "too remote or speculative" standard is appropriate and it is distinctly different from the one promulgated by this Court, which asks whether defense counsel has a good faith or reasonable basis to explore the line of inquiry.  When repeating this standard, the Appellate Divisions cite to their own precedent or to a single case from the Court of Appeals, <u>People v Thomas</u>, 46 N.Y.2d 100 (1978).  Any reliance on <u>Thomas</u>, however, is misplaced because it was authored 10 years before this Court first established the good faith standard for the admission of extrinsic evidence of a motive to fabricate in <u>People v. Hudy</u>, 73 N.Y.2d 40, 56 (1988).  <u>Thomas</u> thus does not stand for the proposition that a good faith defense theory should be excluded if too remote.

The Appellate Divisions' "too remote or speculative" standard frequently results in the exclusion of plausible, relevant, and probative evidence of a motive to fabricate.  The Appellate Divisions are not excluding this evidence because they find the defense theory to be not in good faith or unreasonable—as would be expected if they were applying the good faith standard set by this Court—but rather because it is, in the court's view, "too

---

[1] <u>See</u>, <u>e.g.</u>, <u>People v. Grose</u>, 172 A.D.3d 1092, 1093 (2d Dep't 2019) (acknowledging that "c]ross-examination aimed at establishing a motive to fabricate must proceed on some good faith basis" but finding that the trial court properly excluded "the proposed line of inquiry by defense counsel" because it "was too remote and speculative to infer a motive to fabricate"); <u>People v. Stone</u>, 133 A.D.3d 982, 985 (3d Dep't 2015) (trial court properly precluded defense counsel from questioning a witness about whether the defendant had tried to document physical abuse of the victim a decade before because the evidence was "too remote and speculative"); <u>People v. Poole</u>, 55 A.D.3d 1349, 1350 (4th Dep't 2008) (finding that "the court may in its discretion exclude such proof if it is too remote or speculative"); <u>People v. Jones</u>, No. 196/16, 2020 WL 3260966, at *1 (2d Dep't June 17, 2020) (acknowledging that "examination of witnesses to establish such a motive must proceed upon some good-faith basis," but finding that "the court properly limited defense counsel's questioning of the complainant in a child rape case about a motive to lie to avoid inquiry into a "speculative and remote matter.").

September 16, 2020

remote or speculative." See July 8, 2020 Leave Application at 4-5.[2]  But only in the rarest of cases will defense counsel be able to prove a theory of fabrication prior to cross-examining the witness—defense theories are often speculative or remote until that critical inquiry.  As Judge Fahey wrote in People v. Rouse, 34 N.Y.3d 269 (2019), "[i]n the criminal justice context, cross-examination is universally recognized as a preeminent truth-seeking device." Id. At 275.  The Appellate Divisions' test is thus severely curtailing defendants' ability to use cross-examination and other evidence to show a motive to fabricate, even when the theory is in good faith and rests on a reasonable basis—in this case a letter describing that motive that was not temporally limited to the time of its writing.

Defense counsel in this case wanted to explore through cross-examination—his sole "truth-seeking device" in this context—whether the complainant might be motivated to falsely accuse Mr. Henry out of fear of her parents. Rouse, 34 N.Y.3d at 275.  Several months after she accused Mr. Henry, the complainant wrote a letter describing her fear of her parents and alleging they abused and neglected her and had threatened to send her back to Jamaica.  Asking the complainant in this case about her abusive relationship with her parents—which was likely long-standing—would have prejudiced no one.  Unlike questions concerning her sexual relationships, there is no concern that this cross-examination would improperly cast her as promiscuous or otherwise impugn her character.  There was no reason not to allow this line of questioning.  Its exclusion gutted Mr. Henry's only defense in a case that depended on one witness, a child, who had every reason to fabricate her allegations.

To be sure, this critical line of inquiry was speculative and it was remote.  But it was also completely reasonable, plausible, and in good faith.  The Appellate Division affirmed its exclusion because the Appellate Divisions are applying an inappropriate standard that has never been reviewed by this Court.

The exclusion of this evidence could never be conceived as unimportant or harmless error.  The only evidence other than the complainant's allegation was Mr. Henry's supposed "confessions."  These were not made to law enforcement, but rather to the complainant's mother, a jilted ex-girlfriend of Mr. Henry's, who obtained this "evidence" by extorting him for thousands of dollars while threatening him with an allegation of rape.[3]

---

[2] The trial court in this case refused to allow defense counsel to cross-examine key witnesses about a motive to fabricate because it found the evidence was remote and irrelevant, in that the letter the complainant wrote concerning her troubled relationship with her parents was written "after the event" and "post facto," regardless of what defense counsel's "theory of the case" was (T 141-42, 236).  The Appellate Division affirmed that ruling.

[3] The problem of false confessions and their role in convicting the innocent has been extensively studied, and "[r]ecent studies have identified false confession as the leading or primary cause of wrongful conviction in anywhere from 14-25% of the sample cases studied." Steven A. Drizin &

September 16, 2020

These supposed confessions certainly were not dispositive. The jury may well have disregarded them had they been presented with the complainant's true reasons for fabrication, which went far beyond the fear of getting into trouble in a typical child/parent relationship. The fact that defense counsel was permitted to ask vague, broad questions about the complainant's relationship with her parents, while being prohibited from asking questions that would have revealed neglect, abuse, and fear, was wholly insufficient. Being banished to Jamaica to live with an abusive and neglectful parent provides a far different motivation than do normal mother/daughter tensions. The jury never heard that key evidence.

This issue is presenting itself more and more frequently as the lower courts have shifted away from the good faith standard and embracing the "remote or speculative" standard. This very same issue is being presented in a leave application pending before Judge Wilson, in *People v. Shaking Jones*, 184 A.D.3d 751 (2d Dep't 2020), where the appellate division once again affirmed the lower court's exclusion of evidence relating to a motive to fabricate because it was "too remote or speculative." I'm respectfully requesting reconsideration of the denial of leave to appeal because if the status quo remains, and this Court declines to review it, there is every reason to believe that courts state-wide will continue to exclude critical evidence by applying a standard this Court has never approved.

Respectfully submitted,

Hannah Kon
Staff Attorney
Appellate Advocates
(212) 693-0085 ext.251

cc.    Hon. Eric Gonzalez
       District Attorney
       Kings County
       350 Jay Street
       Brooklyn, New York 11201
       Attn: ADA Diane Eisner

---

Richard A. Leo, The Problem of False Confessions in the Post-DNA World, 82 N.C. L. Rev. 891, 902 (2004).

September 16, 2020

Mr. Bertrand Henry
16-A-1407
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

**Eric Gonzalez**
District Attorney

Diane R. Eisner
Assistant District Attorney

October 7, 2020

Honorable Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York  12207-1095

Re:  <u>People v. Bertrand Henry</u>
     Kings County
     Indictment Number 7388/13

Dear Judge Fahey:

    This letter is submitted in opposition to defendant's application for reconsideration of Your Honor's decision denying leave to appeal to the Court of Appeals from the Appellate Division's affirmance of defendant's convictions. Defendant contends that his leave application was misconstrued as an attack on the application of the rape shield law in this case when that was not his argument. Defendant asserts that his argument in support of his leave application was that the Appellate Divisions in the state have incorrectly applied a "too remote or speculative" analysis when assessing restrictions by a trial court on cross-examination regarding a motive to fabricate, when the analysis should, allegedly, be solely whether defense counsel had a good faith basis for his or her questions.

    First, it should be noted that the Appellate Division in this case did not apply a "too remote or speculative" analysis of defendant's claim that cross-examination of the complainant regarding a letter that she wrote months after accusing defendant of the charged crimes was improperly precluded by the trial court, and that the letter should have been admitted, or questioning about the letter should have been permitted, on the issue of the complainant's alleged motive to fabricate her accusations against defendant. In fact, the Appellate Division, without any discussion, found that claim (one of defendant's "remaining contentions") to be "without merit." <u>See</u> <u>People v. Henry</u>, 183 A.D.3d 607, 608 (2d Dep't 2020).

Hon. Eugene M. Fahey
October 7, 2020
Page 2


    Thus, this case does not even present the issue of whether
the Appellate Division failed to apply the standard that defendant
claims was applicable to his claim.  Moreover, as the People argued
in the Appellate Division, this was a case where defense counsel
had sufficient evidence at trial upon which to argue that the
victim's relationship with her parents provided a motive to
fabricate her accusations against defendant in order to avoid blame
for her sexual relationship with a peer (see Respondent's Brief at
43-46).  Certainly, the court's ruling in this case did not "gut"
defendant's defense that the victim fabricated her accusations
against him.

    Furthermore, in limiting cross-examination in this case
regarding a letter that the victim wrote to her teacher during the
school year following the victim's accusations against defendant,
the trial court adhered this Court's holdings, such as that in
People v. Rouse, 34 N.Y.3d 269, 275 (2019), that a trial judge has
discretion to impose reasonable limits on cross-examination based
on concerns about, among other things, prejudice, confusion of the
issues, and relevance.

    Finally, because defendant was recorded acknowledging his
sexual relationship with the victim, and offering to pay for her
care in another country, any possible error in the limitation on
cross-examination regarding motive to fabricate was entirely
harmless and, for that reason as well, this case does not warrant
review by the Court of Appeals. See People v. Spencer, 20 N.Y.3d
954, 956-57 (2012) (finding restriction on cross-examination
regarding motive to fabricate error, but harmless in light of
overwhelming evidence of guilt).

    For all of the aforementioned reasons, Your Honor should not
reconsider the decision to deny leave to appeal to the Court of
Appeals.

                            Sincerely,

                            *Diane R. Eisner*

                            Diane R. Eisner
                            Assistant District Attorney
                            (718) 250-2489


cc:  Appellate Advocates
     111 John Street – 9th Floor
     New York, N.Y. 10038

     Attn: Hannah Kon, Esq.

# APPELLATE ADVOCATES

111 JOHN STREET – 9TH FLOOR, NEW YORK, NEW YORK 10038
PHONE: (212) 693-0085   FAX: (212) 693-0878

*ATTORNEY-IN-CHARGE*
PAUL SKIP LAISURE

*ASSISTANT ATTORNEY-IN-CHARGE*
DAVID P. GREENBERG

*SUPERVISING ATTORNEYS*
ERICA HORWITZ
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON
LEILA HULL
A. ALEXANDER DONN
PATRICIA PAZNER
MARK W. VORKINK
ALEXIS A. ASCHER
TAMMY E. LINN
MICHAEL ARTHUS

*DIRECTOR OF INNOCENCE INVESTIGATIONS*
DE NICE POWELL

*SENIOR COUNSEL*
YVONNE SHIVERS
KATHLEEN E. WHOOLEY
DENISE A. CORSI
JOSHUA M. LEVINE
MELISSA S. HORLICK

*FOUNDER AND SENIOR COUNSEL*
LYNN W. L. FAHEY

*SENIOR STAFF ATTORNEYS*
JENIN YOUNES
NAO TERAI
ANDERS NELSON
MEREDITH S. HOLT

*STAFF ATTORNEYS*
*YASMINE D. BAILEY
SAMUEL BARR
CAITLYN B. CARPENTER
*SARAH B. COHEN
CYNTHIA COLT
ALICE R. B. CULLINA
PARIS C. DEYOUNG
SAMUEL R. FELDMAN
DAVID FITZMAURICE
REBECCA J. GANNON
*LIV M. GEE
DAVID L. GOODWIN
ISKUHI GRIGORYEV
DENISE GROSMAN
*JENNA D. HYMOWITZ
ANNA JOURAVLEVA
HANNAH KON
ANNA KOU
BRANDON KRONSTAT
MELISSA LEE
CHELSEA F. LOPEZ
EMILY T. LURIE
*RYAN MILLER
SEAN H. MURRAY
SEAN NUTTALL
*CADEN OTUNU
AVA C. PAGE
PRIYA RAGHAVAN
MARTIN B. SAWYER
JONATHAN SCHOEPP-WONG
ANGAD SINGH
SARAH VENDZULES
PATTY C. WALTON
BENJAMIN WELIKSON
DINA ZLOCZOWER

*AWAITING ADMISSION

October 8, 2020

Hon. Eugene M. Fahey
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207-1095

Re:   People v. Bertrand Henry
      Kings Co. Indictment No: 7388/13
      A.D. No. 2016-03720

Your Honor:

I respectfully request permission to submit this reply to the People's opposition and in support of Mr. Henry's request for reconsideration of his application for leave to appeal.

Contrary to the People's position, the Appellate Division affirmed the trial court's specific ruling that the letter and any questioning based on the "content of that letter" concerning the complainant's abusive relationship with her parents was too remote, thus approving this standard (T 236). Indeed, the trial court ruled that because the letter was written "after the event" and "post facto," it could not provide a basis for cross-examination on these issues regardless of what defense counsel's "theory of the case" was (T 141-42, 236). The Appellate Division's affirmance is in keeping with the Appellate Divisions' practice of applying the "too remote or speculative" test instead of the good

faith/reasonable basis test that was promulgated by this Court. The People's opposition does not dispute that the "too remote or speculative" test has never been reviewed by this Court.

The People are similarly incorrect that the complainant's motive to fabricate was before the jury. At most, the jury heard that the complainant had typical mother/daughter tensions and nothing more. But a child facing banishment and abuse is far more incentivized to avoid angering her parents. Defense counsel was prevented from asking questions about threats by the complainant's parents to send her back to Jamaica to an abusive father or the abuse and neglect she suffered from her mother. The complainant's fear of being banished to Jamaica and of being physically and psychologically abused is an entirely different—and much more extreme—motive to fabricate than the one the jury heard.

Finally, this could not have been harmless error. Mr. Henry does not say in the recording that he had sex with complainant. Rather, the complainant's mother directs a conversation in which she accuses Mr. Henry of rape and he repeatedly placates her, sometimes by agreeing to her accusations. Neither the recording nor the written "contract" were directed or controlled by law enforcement. Rather, these supposed confessions were made to the complainant's mother while Mr. Henry was being extorted for thousands of dollars and threatened with allegations of rape and harm to his infant son. They were not dispositive by any means.

The trial court's refusal to allow Mr. Henry to even cross examine the complainant about whether she was afraid of parental abuse and neglect deprived him of his right to present a defense and to confront his accuser. The Appellate Division's affirmance of the trial court's ruling, because it uses an inappropriate "remote or speculative" standard, merits review by this Court.

Respectfully submitted,

Hannah Kon
Staff Attorney
Appellate Advocates
(212) 693-0085 ext.251

cc.    Hon. Eric Gonzalez
District Attorney
Kings County
350 Jay Street
Brooklyn, New York 11201
Attn: ADA Diane Eisner

Mr. Bertrand Henry
16-A-1407
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929