STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BERTRAND HENRY,                              :

        Petitioner,                :  Case No. 1:21-cv-06016-CLP

    -against-                                 :

DONITA MCINTOSH, Superintendent              :
of Clinton Correctional Facility,
                                                    :

        Respondent.
------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# PETITION FOR A WRIT OF HABEAS CORPUS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    A.    Petitioner had a Good Faith Basis to Question C.R. About Her Motive to Fabricate. ............................................................................................................... 2

    B.    Petitioner was Prevented from Exploring C.R.'s Motive to Fabricate on Cross-Examination. ..................................................................................................... 5

    C.    The Defense's Limited Ability to Present C.R.'s Motive to Fabricate Did Not Render the Constitutional Error Harmless in this Single Eyewitness Case With No Physical Evidence. ................................................................................ 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

### Cases

*Borukhova v. Warden, Bedford Hills Corr. Facility*, No. 14-CV-4738 (JG), 2015 WL 5307725 (E.D.N.Y. Sept. 10, 2015) .................................................................................. 8

*Cepeda v. Morton*, No. 19 CV 2444, 2020 WL 6382052 (JGK), (S.D.N.Y. Oct. 30, 2020) ....................................................................................................................................... 8

*Corby v. Arthus*, 699 F.3d 159 (2d Cir. 2012) ......................................................................... 7, 8

*Cusamano v. Donelli*, No. 06 CIV. 6047 (PAC THK), 2007 WL 7216166 (S.D.N.Y. Dec. 19, 2007) ................................................................................................................................. 8

*Davis v. Alaska*, 415 U.S. 308 (1974) ............................................................................... passim

*Edwards v. Mazzuca*, No. 00 Civ. 2290 (RJS), 2007 WL 2994449 (S.D.N.Y. Oct. 15, 2007) ......................................................................................................................................... 9

*Foster v. Warden, Five Points Corr. Facility*, No. 17-CV-5695 (JMA), 2019 WL 4918102 (E.D.N.Y. Sept. 30, 2019) ..................................................................................... 8

*Grant v. Demskie*, No. 99-2744, 2000 WL 1715224 (2d Cir. Nov. 13, 2000) ................ 7

*Hemphill v. New York*, 142 S. Ct. 681 (Jan. 20, 2022) ............................................................. 5

*McGhee v. Uhler*, No. 17 CV 01103 (CM), 2019 WL 4228352 (S.D.N.Y. April 18, 2019) ......................................................................................................................................... 8

*Olden v. Kentucky*, 488 U.S. 227 (1988) ........................................................................... passim

*Padilla v. Artuz*, No. 07 Civ. 5957 (DAB DF), 2010 WL 8971502 (S.D.N.Y. Nov. 18, 2010) ........................................................................................................................................ 3

*Padilla v. LaBalley*, No. 07 Civ. 5957 (DAB), 2012 WL 4473958 (S.D.N.Y. Sep. 28, 2012) ........................................................................................................................................ 3

*People v. Spencer*, 20 N.Y.3d 954, 956 (2012) ............................................................... 4

*Rosado v. Ungar*, No. 11 Civ. 3747 (THK), 2012 WL 5871607 (S.D.N.Y. May 4, 2012) ......................................................................................................................................... 9

*Wallace v. Poole*, No. 10 CV 00722 (MAT), 2011 WL 6370596 (W.D.N.Y. Dec. 20, 2011) .................................................................................................................................... 7

*Washington v. Crawford*, 541 U.S. 36 (2004) ............................................................................. 6

*Weinberg v. Warden Riker's Island Correctional Facility*, No. 11 CV 0614 (CBA), 2012 WL 5834393 (E.D.N.Y. Nov. 16, 2012) ................................................................... 7

**Statutes**

New York Crim. Proc. Law § 60.50 (McKinney) ........................................................................ 9

**Other Authorities**

Steven A. Drizin & Richard A. Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. Rev. 891, 902 (2004) ........................................................................ 9

## PRELIMINARY STATEMENT

C.R was too afraid to tell her mother the truth when her pregnancy was discovered and lied instead, claiming that petitioner was her sole sexual partner and had impregnated her. DNA evidence proved this to be false. C.R. articulated the basis for her fear—long-standing parental abuse—in the letter she wrote to her teacher a few months later, which was disclosed to the defense prior to trial. The question the jury was tasked with answering then was not *whether* C.R. lied, but rather *how much* she had lied. Petitioner's defense thus hinged on a critical distinction, one that he was undeniably prevented from exploring through cross-examination: Did C.R. fear revealing her pregnancy the way a typical teenager would; or did she feel compelled to lie because of a more extreme fear of parental abuse, leading her to claim she was raped by an older man rather than admit she had consensual sex with her teenage boyfriend?

Rather than address this distinction, respondent argues that the defense was permitted to ask any questions about C.R.'s relationship with her parents during the relevant period in 2012 and 2013. But even a cursory review of the record reveals that the court prohibited *all* questioning about abuse, fear, or problematic relationships—even when defense counsel explicitly limited his questions to "back in 2012."[1] The categorical preclusion of this cross-examination robbed the jury of its ability to fairly determine the extent of, and motive for, C.R.'s fabrication, and correspondingly, to fairly decide petitioner's guilt or innocence.

---

[1] T 101-02; T 241-243.

ARGUMENT

A. <u>Petitioner had a Good Faith Basis to Question C.R. About Her Motive to Fabricate.</u>

C.R.'s confirmed lie about who impregnated her gave the defense ample good cause to explore whether she was motivated to fabricate her other allegations. The letter she wrote to her teacher, in which she discussed abuse beginning in Jamaica and long before the events at issue here, provided strong support for the defense theory that she lied about the other allegations to avoid abuse.

In response, respondent tautologically claims that petitioner's rights were not violated because questions concerning C.R.'s abusive relationship were "based solely on the letter" and "based entirely on speculation."[2] In other words, petitioner had no basis to elicit evidence about whether C.R. was abused and feared her parents, according to respondent, because he possessed no evidence that C.R. was abused and feared her parents.

But the rights bestowed by the Confrontation Clause would be hollow were a defendant required, as respondent suggests, to first present definitive evidence of a motive to fabricate before being permitted to cross-examine a witness on that basis. To be sure, for criminal defendants—who have no pre-trial opportunities to depose their accusers—every defense theory based on a witness's motive to fabricate is somewhat speculative until cross-examination. *Davis v. Alaska*, 415 U.S. 308 (1974)

---

[2] Respondent's Brief at 14.

("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.").

Indeed, respondent's restrictive interpretation of the Confrontation Clause is contradicted by hundreds of years of jurisprudence and irreconcilable with the clearly established law in *Davis* and *Olden v. Kentucky*, 488 U.S. 227 (1988), which it makes no attempt to distinguish. Respondent devotes just one sentence—eight words in length—to discussing *Olden* and *Davis*.[3] Instead of addressing the factual and legal similarities of that Supreme Court precedent, respondent relies on *Padilla v. LaBalley*, No. 07 Civ. 5957 (DAB), 2012 WL 4473958 (S.D.N.Y. Sep. 28, 2012), an unreported district court case involving the general impeachment of a witness's credibility—a wholly distinct issue from cross-examination into a motive to fabricate. If anything, *Padilla* reaffirmed that *Olden* and *Davis* "squarely held that a criminal defendant may not be prevented from cross-examining a witness regarding the witness's potential bias." *Padilla v. Artuz*, No. 07 Civ. 5957 (DAB DF), 2010 WL 8971502, at *7-8 (S.D.N.Y. Nov. 18, 2010), *adopted by Padilla*, 2012 WL 4473958. *Padilla* is thus irrelevant to this petition, which relates exclusively to C.R.'s bias and motive to fabricate, and the similarities between this case and *Olden* and *Davis* remain unrebutted by respondent.

Throughout its response, respondent also recasts petitioner's claim as merely a protest against the "curtailment of cross-examinations regarding C.R.'s letter to her

---

[3] Respondent's Brief at 15.

3

teacher."[4]  Respondent's myopic focus on the letter itself ignores that defense counsel sought to use the letter as a good faith basis to cross-examine C.R. and her mother about abuse, fear, and problems in the household.  Nor does the letter, as respondent claims, only refer to a threat that "postdated" C.R.'s accusations.[5]  On the contrary, the letter references abuse by C.R.'s father occurring before C.R. moved to the United States in 2011:[6]

> . . . I have nothing to lose because I'm going <u>back to Jamaica to live with my abusive father, who's always beating me</u>.  She says she is done with me when she sends me back.  She's not going to send money for me to go to school, to buy uniforms, or even to eat (emphasis added).[7]

If C.R. was abused when she lived in Jamaica, before moving to the United States, she had every reason to fear being sent back there in August 2013 when her pregnancy was discovered.  In addition to being factually incorrect, respondent's point is also legally irrelevant because, as *Olden* demonstrated, events that postdate an

---

[4] Respondent's Brief at 4, 5, 6, 10, 13, 14, 17, 21.

[5] Respondent's Brief at 14.

[6] The letter could have also been used to impeach C.R. had she lied in response to these questions, because there was a good faith basis to introduce extrinsic evidence of a motive to fabricate. *See, e.g., People v. Spencer*, 20 N.Y.3d 954, 956 (2012).  But because petitioner was precluded from asking these questions, we cannot know if it would have been necessary to use the letter as impeachment.

[7] To the extent that respondent is claiming that the abuse by C.R.'s father occurred only at the time the letter was written, and not prior to when C.R. came to America in 2011 (Respondent's Brief at 14), that claim is belied by the record.  The letter was written in February 2014, and C.R.'s father did not arrive in the United States until the year before the trial, in 2015 (T 154).  Thus, the fear of "going back to Jamaica to live with my abusive father who's always beating me" could only have referred to abuse that C.R. suffered in Jamaica prior to arriving in the United States.

4

accusation can still provide a good faith basis for cross-examination about a motive to fabricate. *See Olden*, 488 U.S. at 228-30. Indeed, in *Olden*, the cohabitation of the complainant with her boyfriend after her accusation and prior to trial provided a basis to cross-examine her about relationship existing at the time of the accusation. *Id.*

The defense sought to question C.R. and her mother about a fear of parental abuse that was long-standing—beginning in Jamaica when C.R. was abused by her father and continuing in America—and severe enough to motivate a fake accusation. At bottom, whether the abuse actually occurred; why it occurred; and how it may have affected C.R.'s allegations were all questions the jury should have decided—not the trial court or the prosecutor. *See Hemphill v. New York*, 142 S. Ct. 681, 694 (Jan. 20, 2022) ("The Confrontation Clause requires that the reliability and veracity of the evidence against a criminal defendant be tested by cross-examination, not determined by a trial court.").

B.  Petitioner was Prevented from Exploring C.R.'s Motive to Fabricate on Cross-Examination.

The court's blanket prohibition on all questions concerning C.R.'s fear of abuse prevented the defense from ever presenting her motive to fabricate to the jury. Respondent nevertheless insists that the court allowed all inquiry into C.R.'s relationship with her mother at the time C.R. made her accusations,[8] and the defense theory was correspondingly fully before the jury. But the record demonstrates that

---

[8] Respondent's Brief at 4, 6, 11-12, 14, 16.

5

many of the questions the trial court precluded related specifically to the period *prior* to when C.R.'s pregnancy was discovered in September 2013. The Court sustained the prosecution's objection when defense counsel asked C.R. if "*before September 2012*," her "mother ever hit [her]" and whether C.R.'s mother had ever threatened her with being sent to Jamaica.[9] The court also sustained an objection when defense counsel asked whether there was a reason C.R. did not want to engage in too much conversation with her mother during the period prior to the allegations.[10] When defense counsel asked C.R.'s mother what her relationship with C.R. was like *"[b]ack in 2012*," whether, at that time, she "had problems with C.R.," and whether she had ever "*hit [C.R.] in 2012*," the court sustained the People's objections.[11]

Contrary to respondent's suggestion,[12] the defense summation did not otherwise put the crucial evidence of C.R.'s motive to fabricate before the jury. Because the court prevented the defense from eliciting the evidence of abuse, defense counsel could do nothing other than theorize during summation that C.R. might be scared of her mother. But no amount of unsupported conjecture by defense counsel could substitute for testimony tested "in the crucible of cross-examination." *Washington v. Crawford*, 541 U.S. 36, 61 (2004). It is no surprise that the jury rejected what appeared, given the court's limits on cross-examination, to be pure speculation by the defense.

---

[9] T 242-43 (emphasis added).
[10] T 242-43.
[11] T 101-102 (emphasis added).
[12] Respondent's Brief at 6-7.

6

Tellingly, respondent fails to cite any case involving circumstances even remotely similar to those at issue here, where the sole physical evidence in the case proved that the complainant had lied about at least part of her accusation.[13] C.R.'s lie about petitioner being her sole sexual partner—a false claim made at the same moment that she accused petitioner of rape for the first time—proved that the precluded cross-examination was both relevant and necessary to present petitioner's defense.

Finally, respondent's suggestion that petitioner was afforded sufficient inquiry to present its motive to fabricate defense is contrary to the Supreme Court's ruling in *Davis*. There, the Supreme Court rejected this very same argument, holding that cross-examination into some, but not all, of the witness's reasons to fabricate was insufficient to put the defense before the jury. *Davis*, 415 U.S. at 311-13. Like in *Davis*, petitioner's Confrontation Clause right was violated because he was not

---

[13] The cases cited by respondent in support of its argument that petitioner was permitted enough cross-examination are also inapposite for various other reasons. *See Corby v. Artus*, 699 F.3d 159, 167 (2d Cir. 2012) (declining to reverse because "the retaliation-bias argument was not presented to the trial judge" so it "could not have been an abuse of that judge's discretion not to rule in Corby's favor on this basis"); *Grant v. Demskie*, No. 99-2744, 2000 WL 1715224, at *4 (2d Cir. Nov. 13, 2000) (though the trial court "appears to have unduly restricted the scope of cross-examination, there is little evidence in the record indicating that significant motive evidence was in fact precluded" by refusing cross-examination on the 7-year-old complainant's prior allegations of rape); *Wallace v. Poole*, No. 10 CV 00722 (MAT), 2011 WL 6370596, at *11 (W.D.N.Y. Dec. 20, 2011) (affirming trial court's decision to prevent cross-examination of the victim's mother about an unrelated child custody agreement involving one of their other children who was not involved in the criminal trial); *Weinberg v. Warden Riker's Island Correctional Facility*, No. 11 CV 0614 (CBA), 2012 WL 5834393 (E.D.N.Y. Nov. 16, 2012) (the defendant sought to cross-examine the child complainant on a past incident of sexual conduct, which the trial court precluded under New York's Rape Shield Law).

permitted to put his full defense—not just the defense that respondent unilaterally deems sufficient—before the jury.

C. The Defense's Limited Ability to Present C.R.'s Motive to Fabricate Did Not Render the Constitutional Error Harmless in this Single Eyewitness Case With No Physical Evidence.

Respondent concedes that the evidence of the alleged rapes themselves came exclusively from C.R.'s testimony.[14] C.R. was the only eyewitness to the alleged crimes and there was no corroborating physical evidence. Her allegation that petitioner raped her was the *sine qua non* of every single charge. If the jury believed C.R. fabricated her accusation, they would have necessarily also determined that petitioner had not raped her, making all the other supposed circumstantial evidence respondent points to irrelevant.

First, respondent does not cite a single decision in which a Confrontation Clause error was considered harmless when no physical evidence existed and the conviction depended on a single eyewitness.[15] This failure is unsurprising given the

---

[14] Respondent's Affidavit at ¶¶ 6-9.

[15] Respondent's Brief at 17-21, citing to *Foster v. Warden, Five Points Corr. Facility*, No. 17-CV-5695 (JMA), 2019 WL 4918102, at *6 (E.D.N.Y. Sept. 30, 2019) (extensive forensic evidence implicating defendant introduced during his trial for the killing of a newborn); *Borukhova v. Warden, Bedford Hills Corr. Facility*, No. 14-CV-4738 (JG), 2015 WL 5307725, at *2 (E.D.N.Y. Sept. 10, 2015) (three eyewitnesses to the murder testified at trial); *Corby*, 699 F.3d at 169 (court did not reach harmless error analysis); *Cepeda v. Morton*, No. 19 CV 2444, 2020 WL 6382052 (JGK), at *8 (S.D.N.Y. Oct. 30, 2020) (limitation on cross-examination of an officer in burglary case not harmless error when he was only one of three officers to testify, there were multiple eyewitnesses who gave descriptions of the defendants, and the gun involved in the crime was admitted at trial); *McGhee v. Uhler*, No. 17 CV 01103 (CM), 2019 WL 4228352 (S.D.N.Y. April 18, 2019) ("long-term investigation into drug

extraordinary facts at issue here, where the physical evidence proved the sole eyewitness had fabricated at least part of her accusation.

Next, respondent points to testimony from C.R.'s mother and sister that petitioner played a fatherly role—he took C.R. places at her request and bought essential items for the family—and, in her sister's opinion, C.R. would dress up too much before seeing petitioner. But none of these facts come close to the level of proof necessary to sustain a criminal conviction for rape.

Finally, the supposed "admissions" by petitioner—the "contract," text message, and audio-recording—were both unreliable and insufficient to sustain a conviction. False admissions are far from uncommon, especially when made under duress, and for this reason a "person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed."[16] New York Crim. Proc. Law § 60.50 (McKinney). This

---

trafficking" during which multiple "undercover detectives purchased crack cocaine from McGhee on six separate occasions"); *Rosado v. Ungar*, No. 11 Civ. 3747 (THK), 2012 WL 5871607 (S.D.N.Y. May 4, 2012) (two friends testified they saw the underage complainant kiss the defendant and then go into his bedroom); *Edwards v. Mazzuca*, No. 00 Civ. 2290 (RJS), 2007 WL 2994449, at *7 (S.D.N.Y. Oct. 15, 2007) (confrontation clause error involved testimony of arresting officer, not the victim's testimony); *Cusamano v. Donelli*, No. 06 CIV. 6047 (PAC THK), 2007 WL 7216166, at *7 (S.D.N.Y. Dec. 19, 2007) (burglary conviction where the stolen goods were found on the defendant's person when police confronted him).

[16] The problem of false confessions and their role in convicting the innocent has been extensively studied, and "studies have identified false confession as the leading or primary cause of wrongful conviction in anywhere from 14-25% of the sample cases studied." Steven A. Drizin & Richard A. Leo, *The Problem of False Confessions in the Post-DNA World*, 82 N.C. L. Rev. 891, 902 (2004).

9

court should reject respondent's attempt to usurp the jury's role and speculate how it would have weighed C.R.'s accusations against appellant's testimony if the defense theory had been fully presented.

In sum, if the jury rejected C.R.'s testimony as fabricated, none of the prosecution's evidence, cumulatively or otherwise, proved petitioner guilty beyond a reasonable doubt.

## CONCLUSION

For the reasons stated above and in the petition, petitioner requests that this Court issue a writ of habeas corpus, order respondent to discharge petitioner from his unconstitutional custody, and grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Hannah Kon
Hannah Kon (HK3713)
APPELLATE ADVOCATES
111 John Street, 9th Floor
New York, New York 10038
(212) 693-0085, ext. 549
hkon@appad.org

Attorney For Petitioner

March 3, 2022